**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NUTRITITION DISTRIBUTION LLC,<br><br>Plaintiff,<br><br>v.<br><br>FULFILLMENT PROS LLC, *et al.*,<br><br>Defendants. | Case No. 16-cv-03115-BAS-JLB<br><br>**ORDER GRANTING DEFENDANTS BLAKE MADGETT AND KIMBERLY BORKHATARIA'S MOTION TO DISMISS**<br><br>**[ECF No. 10]** |

Defendants Blake Madgett and Kimberly Borkhataria move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3) for lack of personal jurisdiction and improper venue. (ECF No. 10.) Because the Court ultimately concludes exercising personal jurisdiction over these two Defendants would not be reasonable and would not comport with "fair play and substantial justice," the Court **GRANTS** the Motion to Dismiss these two Defendants pursuant to Rule 12(b)(2).

**I.    STATEMENT OF FACTS**

Plaintiff—an Arizona limited liability company whose principal place of business is in Arizona—alleges that Defendant PTG Group, a Florida corporation, is the former owner of the Extreme Peptides website that sells nutritional supplements via the internet. (Compl.

– 1 –

¶¶ 9, 12, ECF No. 1.)  Both Defendants Madgett and Borkhataria deny that PTG Group had any ownership interest in or controlled the Extreme Peptides website.  (Declaration of Kimberley Borkhataria ("Borkhataria Decl.") ¶ 7, ECF No. 10-1 at 1; Declaration of Blake Madgett ("Madgett Decl.") ¶ 10, ECF No. 10-1 at 6.)  Madgett further avers that he did not ever individually have any control or ownership of the Extreme Peptides website.  (Madgett Decl. ¶ 10.)

Madgett is (or was, because it appears PTG Group was dissolved after this Complaint was filed) the registered agent and president of PTG Group, and Borkhataria is (or was) the CFO.  (Compl. ¶¶ 14–15; Req. for Judicial Notice, ECF No. 12-2.)[1]  Both Madgett and Borkhataria are Florida residents, and they file uncontradicted declarations that they have never resided in California, have not visited California in the last ten years, and have never conducted business in California.  (Borkhataria Decl. ¶¶ 1, 3–4; Madgett Decl. ¶¶ 3–5.)

The Extreme Peptides website offers the products at issue for sale with statements Plaintiff contends are false and misleading.  (Compl. ¶¶ 1, 25.)  Without specifying to which of the six named Defendants it is referring, Plaintiff alleges that "Defendant purposefully and voluntarily placed the products into the stream of commerce with the expectation that they will be purchased [in the Southern District of California]."  (*Id.* ¶ 7.)  Plaintiff offers screenshots of the Extreme Peptides website that indicate the products can

---

[1] Both parties request that the Court take judicial notice of various documents.  Madgett and Borkhataria request that the Court take judicial notice of: (A) a federal information charging Anabolic Resources with introduction of unapproved drugs with intent to defraud; (B) a guilty plea by Anabolic Resources to this same charge; (C–H) prior lawsuits filed by Nutrition Distribution, LLC; and (I) an opinion issued out of the Central District of California.  (ECF No. 14.)  Although these documents may be proper subjects of judicial notice, they have no bearing on the Court's decision in this case.  Therefore, the Court denies the request.
  In addition, Nutrition Distribution requests that the Court take judicial notice of a copy of the records of the Florida Department of State, Division of Corporations, showing that PTG Group was dissolved one month after the Complaint was filed in this case.  (ECF No. 12-2.)  Defendants do not object.  Therefore, the Court will take judicial notice of this document.  *See* Fed. R. Evid. 201(b)(2) ("The Court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

be shipped throughout the United States, free shipping is available in the United States for all orders over $99, and fulfillment centers are located throughout the United States. (Declaration of Robert Tauler ¶ 2, Ex. A, ECF No. 12-1.)[2] The screenshots also suggest that a membership plan is available; viewers are encouraged to create an account online, which will lead to member-only sales. (*Id.*)

Plaintiff claims Defendant (again without specifying among the six named Defendants) has been unjustly enriched at the expense of Plaintiff, a competing nutritional supplement company, and has caused Plaintiff extensive and irreparable harm including loss of revenue, disparagement, and loss of good will. (Compl. ¶¶ 4, 24.) Although Plaintiff alleges generally that a "substantial part of the events which gave rise to this claim occurred in this district," (*id.* ¶ 8), Plaintiff does not allege that it sells products in California or that any of its revenue comes from California, nor does Plaintiff allege that any California residents purchased the products from the Extreme Peptides website. All six named Defendants are Florida residents. No parties are alleged to be residents of California.

## II. ANALYSIS

When a party moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rios Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). In ruling on the motion, the "court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co., Ltd.*, 851

---

[2] Plaintiff offers the Declaration of its counsel, Robert Tauler, in support of its Opposition to the Motion to Dismiss. (ECF No. 12-1.) Defendants object only to Tauler's offer of text messages ostensibly from Madgett, arguing that these messages lack authentication and are inadmissible hearsay. (Reply n. 11, 5:25–26, ECF No. 13 (in what appears to be a typographic error, Defendants label this footnote number 11, although it is the first footnote in their Reply). The court overrules these objections, although ultimately the Court finds the text messages have little relevance to its ultimate decision in this order.

F.3d 1015, 1024 (9th Cir. 2017). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Unocal*, 248 F.3d at 922.

Although the court "may not assume the truth of allegations in a pleading which are contradicted by [an] affidavit," *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011), the court must "resolve disputed jurisdictional facts in the plaintiff's favor," *Nissan Motor Co., Ltd. V. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154. Both the California and federal long-arm statutes require compliance with due-process requirements. *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 753 (2014); *see also* Fed. R. Civ. P. 4(k)(2); *Holland Am Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).

There are two types of personal jurisdiction: general and specific. *See Daimler AG*, 134 S. Ct. at 754–55. "Since *International Shoe* . . . 'general jurisdiction [has played] a reduced role.'" *Id.* at 755 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 925 (2011)). General jurisdiction "enables a court to hear cases unrelated to the defendant's forum activities[.]" *Fields v. Sedgewick Assoc. Risks, Ltd.*, 796 F.2d 299, 310 (9th Cir. 1986). Specific jurisdiction allows the court to exercise jurisdiction over a defendant whose forum-related activities gave rise to the action before the court. *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

There is little question that this Court lacks general jurisdiction over Madgett and Borkhataria—who are Florida residents that have never lived in California, have not visited

California in the past ten years, and have never conducted business in California. Instead, Plaintiff asserts that specific jurisdiction over these Defendants is proper.

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed him or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).

The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155. The Court thus analyzes each of these prongs below.

### 1. Purposeful Availment

In the context of internet website advertising, the Ninth Circuit has held that a Defendant's purposeful availment runs on a continuum: when the website is merely a passive advertisement or available for informational purposes, the Defendant has not purposefully availed itself of the privilege of conducting activities in the forum, but where the entity is actually conducting business or sales over the internet, it may constitute purposeful availment. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997); *see also Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) ("By advertising and offering its products for sale via the Internet, [defendant] has placed its

products into the stream of commerce intending that they would be purchased by consumers with access to the Web, including California citizens.")

Whether a defendant has purposefully directed his activities to a forum state such that this first prong is met is guided by the three-part "Calder-effects" test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Brayton Purcell*, 606 F.3d at 1128. The defendant must have: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing a harm that the defendant knows is likely to be suffered in the forum state. *Id.*

In this case, Plaintiff alleges that Madgett and Borkhataria controlled PTG Group, which was responsible for the Extreme Peptides website. Although both Madgett and Borkhataria submit affidavits denying PTG Group controlled the website, Plaintiff provides copies of screenshots showing that PTG Group was listed as the contact for the website. For purposes of this motion, the Court must resolve these disputed jurisdictional facts in Plaintiff's favor. Therefore, for purposes of the motion, the Court will assume that Madgett and Borkhataria controlled the website via PTG Group.

However, Plaintiff alleges that the sale of the products on the Extreme Peptides website led Plaintiff, an Arizona resident, to suffer irreparable harm, including loss of revenue, disparagement, and loss of good will. Plaintiff does not explain how Defendants knew that this alleged harm to an Arizona company was likely to be suffered in California. Plaintiff fails to allege that it has a customer base in California, that it has ever sold a product in California, that PTG Group has ever sold a product in California, or that Madgett and Borkhataria knew that Plaintiff sold products in California. Plaintiff has simply failed to meet its burden to show that Madgett and Borkhataria, even if they controlled the Extreme Peptides website, purposefully directed their activities to the Southern District of California. None of the cases relied on by Plaintiff involve a non-resident Plaintiff targeting non-resident Defendants. In that case, something more is required, indicating how the harm was targeted at the chosen forum. Thus, the purposeful availment prong is not satisfied. *See, e.g.*, *Brayton Purcell*, 606 F.3d at 1124 (providing the defendants must

have caused an alleged harm that they knew would be likely to be suffered in the forum state).

### 2. Cause of Action Arising out of the Defendant's Forum-Related Activities

This second prong requires that the claim "arise out of" the defendant's forum-related activities. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 383 (9th Cir. 1990), *reversed on other grounds*, 499 U.S. 585 (1991). The court must determine whether the plaintiff would not have been injured "but for" the defendant's conduct directed toward the plaintiff in the chosen forum. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

In this case, even if Madgett and Borkhataria, through the Extreme Peptides website, were selling products in California, Plaintiff fails to explain how its claim that it was harmed by false advertising "arose out of" this forum. In other words, just because Madgett and Borkhataria may have advertised or even sold products in California, Plaintiff fails to show how this Arizona company would not have been injured "but for" the Defendants' advertising in California. Given the paucity of allegations concerning California, Plaintiff fails to make this showing. Hence, the second prong of the specific jurisdiction test is also not satisfied.

### 3. Reasonableness

The exercise of jurisdiction lacks reasonableness if it does not comport with "fair play and substantial justice." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993). In assessing reasonableness, the court considers seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of

– 7 –

16cv3115

have caused an alleged harm that they knew would be likely to be suffered in the forum state).

### 2. Cause of Action Arising out of the Defendant's Forum-Related Activities

This second prong requires that the claim "arise out of" the defendant's forum-related activities. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 383 (9th Cir. 1990), *reversed on other grounds*, 499 U.S. 585 (1991). The court must determine whether the plaintiff would not have been injured "but for" the defendant's conduct directed toward the plaintiff in the chosen forum. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

In this case, even if Madgett and Borkhataria, through the Extreme Peptides website, were selling products in California, Plaintiff fails to explain how its claim that it was harmed by false advertising "arose out of" this forum. In other words, just because Madgett and Borkhataria may have advertised or even sold products in California, Plaintiff fails to show how this Arizona company would not have been injured "but for" the Defendants' advertising in California. Given the paucity of allegations concerning California, Plaintiff fails to make this showing. Hence, the second prong of the specific jurisdiction test is also not satisfied.

### 3. Reasonableness

The exercise of jurisdiction lacks reasonableness if it does not comport with "fair play and substantial justice." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993). In assessing reasonableness, the court considers seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of

the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* at 1487–88.

Even assuming the Plaintiff in this case has met its burden of showing that Madgett and Borkhataria purposefully availed themselves of the privilege of conducting activities in the Southern District of California and their forum-related activities resulted in Plaintiff's cause of action, these two Defendants have met their burden of showing the exercise of jurisdiction over them would not be reasonable.

First, as discussed above, there is no evidence that Madgett or Borkhataria purposefully interjected themselves into California's affairs. Although the website purports to sell products throughout the United States, it is not clear whether it did, in fact, do so. Requiring these individual Defendants to litigate in California, when they live in Florida, never lived in California, and have not visited California in at least ten years, while not an insurmountable obstacle, would be a burden. California has only a minimal interest in adjudicating this dispute. None of the parties is a California resident. This forum has less interest in providing an effective redress to Plaintiff, who is a non-resident of California. Furthermore, there is no indication that witnesses or evidence are located in California. Because the parties reside in Florida and Arizona, presumably the evidence and witnesses are located in those states, and thus California is not a particularly efficient forum in which to resolve the controversy. Plaintiff has less of an interest in litigating the controversy in California because it is a non-resident, and it is unclear why this forum was selected by Plaintiff. Finally, alternative forums, in Arizona and Florida, both of which appear to have a greater connection to the events at issue, are available. Accordingly, the balance of the factors demonstrates it is not reasonable for the Court to exercise jurisdiction over Madgett or Borkhataria. *See Core-Vent Corp.*, 11 F.3d at 1487–88.

## III. CONCLUSION

The Court finds Plaintiff has failed to show that Madgett and Borkhataria purposefully availed themselves of the privilege of conducting activities in this forum and

– 8 –

16cv3115

that the alleged cause of action arose out of their forum-related activities. Furthermore, an exercise of personal jurisdiction over these two Florida residents would lack reasonableness. Therefore, Defendants Madgett and Borkhataria's Motion to Dismiss (ECF No. 10) is **GRANTED**, and these two Defendants are dismissed from the Action.[3]

**IT IS SO ORDERED.**

DATED: August 21, 2017

Hon. Cynthia Bashant
United States District Judge

---

[3] The Court directs the Clerk of the Court to also **TERMINATE** ECF No. 9, which is duplicative of Defendants' Motion to Dismiss (ECF No. 10). (*See* Notice of Withdrawal of Document, ECF No. 11.)